Laeila NELSON, Stephanie Nelson, Phil Nelson, Petitioners,

v.

### IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 99–2283.

United States Court of Appeals, First Circuit.

Heard Sept. 11, 2000.

Decided Oct. 27, 2000.

---

Alan M. Pampanin, with whom Pampanin Law Offices was on brief, for petitioners.

Lisa M. Arnold, Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, with whom David W. Ogden, Acting Assistant Attorney General, Civil Division, and Terri Jane Scadron, Senior Litigation Counsel, Office of Immigration Litigation, were on brief, for respondent.

Before TORRUELLA, Chief Judge, STAHL and LIPEZ, Circuit Judges.

TORRUELLA, Chief Judge.

Laeila Nelson, a citizen of Suriname, appeals a final order of the Board of Immigration Appeals (BIA) affirming a deportation order which denied her application for asylum and withholding of deportation.[1] She claims that the BIA's failure to grant her a new hearing violated her right to due process, specifically her right to counsel. Nelson also claims that the BIA erred in its finding that she was ineligible for asylum and withholding of deportation under 8 U.S.C. §§ 1101(a)(42), 1158(a), and 1253(h). Because we find these arguments unpersuasive, we affirm the BIA's decision.

## BACKGROUND

Laeila Nelson left Suriname in December of 1994 and settled in Somerville, Massachusetts. Within two months of her arrival, she applied for political asylum and withholding of removal pursuant to the Immigration and Nationality Act (INA) §§ 208(a) and 243(h), 8 U.S.C. §§ 1158(a), 1243(h). Her application was made without the assistance of counsel.

The Immigration and Naturalization Service (INS) began deportation proceedings against Nelson and her two children, charging them with deportability under INA § 241(a)(1)(B), 8 U.S.C. § 1251(a)(1)(B), for remaining in the United States beyond the time permitted under their non-immigrant visas. At an initial deportation hearing on January 2, 1996, Immigration Judge Patricia Sheppard (the "Immigration Judge") informed Nelson of her right to be represented by counsel "at no cost to the government," provided her with a list of pro bono attorneys, and continued the hearing until April 24, 1996, so that Nelson would have time to find adequate counsel if she chose to do so.

1. Nelson's application for asylum was consolidated with that of her children, Stephanie (age 15) and Paul (age 12). We treat them as one claim, as well, for the purposes of this appeal.

On April 24, 1996, Nelson again appeared without counsel. The Immigration Judge asked Nelson if she had retained an attorney; Nelson responded in the negative. The Immigration Judge then told Nelson that she would have to represent herself. Upon determining that Nelson had stayed beyond the expiration of her temporary visa, the Immigration Judge found that her deportability had been established, and continued the asylum hearing until March 17, 1997. The judge again told Nelson that she would have the interim period to find counsel.

At the March 17, 1997 hearing, Nelson again appeared without the assistance of counsel. The Immigration Judge proceeded to ask her questions about her asylum claim. Nelson then indicated that she had a severe headache, which hindered her ability to answer questions related to her claim. At times, Nelson took more than five minutes to answer the Immigration Judge's queries; and at one point, Nelson noted that "my memory ... is bad and so I forget things and get pain. I'm not capable of defending myself." After admonishing Nelson that she would not be entitled to further continuances, the Immigration Judge continued the case until April 2, 1997. No admonishment with respect to retaining counsel was made at this time.

■ At her final hearing before the Immigration Judge, on April 2, 1997, again lacking counsel, Nelson testified as to the facts forming the basis for her asylum claim. The Immigration Judge found that her testimony lacked sufficient specific evidence to support her application, and that even if the evidence was viewed in the light most favorable to Nelson, she had not shown either "persecution" or a "well-founded fear of persecution," as required for asylum under § 208. Nelson also did

not meet the more stringent standard required for withholding of deportation under § 243.[2] Nelson and her family were granted their request for voluntary departure, giving them 30 days to leave the United States of their own accord.

After retaining counsel, Nelson appealed the Immigration Judge's decision. Despite considering new evidence adduced by Nelson on appeal and conducting a de novo review of the prior record, the BIA concluded that Nelson did not qualify for asylum under § 208.

## DISCUSSION

### I. Violation of Due Process

■ We first examine Nelson's claim that the Immigration Judge effectively denied her statutory rights to counsel and a full and fair hearing, and thus violated her Fifth Amendment right to due process. Because deportation is a civil proceeding, rather than a criminal one, the Sixth Amendment does not create a right to government-provided counsel for prospective deportees. *See INS v. López–Mendoza,* 468 U.S. 1032, 1038–39, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984). However, an alien is afforded the right to counsel at his own expense. *See, e.g., Ríos–Berríos v. INS,* 776 F.2d 859, 862 (9th Cir.1985).

Nelson makes three separate but related due process claims, and we evaluate each in turn.

### A. Mental Incompetence

■ Nelson suggests that the Immigration Judge's failure to account for her mental incompetence by requesting a custodian or other party to appear on her behalf was a violation of her right to due process. The INS has specifically provided for custodial or other representation of

2. Because a failure to prove eligibility for asylum under INA § 208, 8 U.S.C. § 1158, necessarily means a failure to meet the requirements for withholding of deportation, we only discuss the former. *See INS v. Stevic,* 467 U.S. 407, 421–22, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984) (requiring a showing of "clear probability" of future persecution for withholding of deportation); *INS v. Cardoza–Fonseca,* 480 U.S. 421, 423–24, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (reaffirming the distinction between the two standards).

incompetent aliens in Regulation 240.4.[3] Nelson claims that her March 17, 1997 statement that her "memory . . . is bad," that she "forget[s] things and . . . get[s] pain," and thus that she was "not capable of defending [her]self" was a statement of mental incompetency; and as such, that the Immigration Judge was required to request a representative for her. However, Regulation 240.4 is not applicable to this case, simply because Nelson's health-related complaints do not rise to the level of mental incompetence contemplated by Regulation 240.4. *Cf. Nee Hao Wong v. INS*, 550 F.2d 521, 522 (9th Cir.1977) (Regulation 240.4 used to deport institutionalized petitioner).

### B. Failure to Follow INS Statutory Regulations

■ An agency has the duty to follow its own federal regulations, even when those regulations provide greater protection than is constitutionally required. *See Accardi v. Shaughnessy*, 347 U.S. 260, 265–68, 74 S.Ct. 499, 98 L.Ed. 681 (1954) (applying doctrine for first time to immigration case). Failure to follow applicable regulations can lead to reversal of an agency order and a new hearing. *See id.* at 268, 74 S.Ct. 499. The Second Circuit has noted some confusion over whether a litigant claiming that an agency failed to follow its own regulations must prove that the failure was prejudicial. *See Montilla v. INS*, 926 F.2d 162, 166–69 (2d Cir.1991) (deciding that, at least where the right to counsel was touched by the regulation in question, proof of prejudice was not necessary); *Waldron v. INS*, 17 F.3d 511, 518 (2d Cir.1993) (limiting *Montilla* to "fundamental" constitutional or statutory rights). We need not determine whether a fundamental right was at issue, nor whether Nelson must show prejudice, because we find no evidence that the Immigration Judge violated any INS regulation.

Appellant makes much of Regulation 240.4, discussed above. Given the limited nature of Nelson's symptoms at the March hearing, we can not conclude that the Immigration Judge violated this regulation. Finally, the record indicates that the Immigration Judge followed the specific requirements of Regulation 240.10, 8 C.F.R. § 240.10, as they pertain to the conduct of the deportation hearing.

### C. Failure to Follow Immigration Judge Benchbook

■ Nelson similarly claims that the Immigration Judge's failure to follow her Benchbook guidelines deprived Nelson of her right to counsel and thus is a violation of due process. Even if a failure to follow Benchbook guidelines can, like a failure to follow agency regulations, lead to reversal, and even if Nelson need not show prejudice to gain reversal for a violation of Benchbook guidelines, we find no such violation here.

The key Benchbook provision in question is III.D.3, which instructs the Immigration Judge, in relevant part, to:

> [E]xplain the right to counsel, emphasizing that free legal services may be available. Impress upon the respondent that he/she must decide whether to retain counsel. . . . The explanation of the right to counsel must be a meaningful one and you must tailor the explanation to the individual respondent. . . . If the respondent is undecided as to counsel, it may be proper to grant a short postponement.

Appellant reads this provision as requiring an Immigration Judge to "admonish" a potential deportee, at any and every hearing, that she may want to retain counsel. The record indicates, and appellant admits, that Judge Sheppard adequately explained the right to counsel more than once.

---

**3.** Regulation 240.4 allows a representative to appear on an alien's behalf "[w]hen it is impracticable for the respondent to be present at the hearing because of mental incompeten-

cy." When no representative appears, "the custodian of the respondent shall be requested to appear." 8 C.F.R. § 240.4.

Judge Sheppard also postponed Nelson's hearing several times to allow her to find counsel, an action suggested, but not mandated, by the Benchbook. *Cf. Vides–Vides v. INS*, 783 F.2d 1463, 1470 (9th Cir.1986) (upholding refusal to grant second continuance where petitioner had "adequate opportunity to obtain counsel" and had simply been unable to do so). In sum, the Immigration Judge adhered to the Benchbook rules.

## II.  Eligibility for Asylum

■ An alien may be eligible for asylum if she "is a refugee within the meaning of [8 U.S.C. § ] 1101(a)(42)(A)...." 8 U.S.C. § 1158(b)(1). "Refugees" are defined as persons "unable or unwilling to return [to their country] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion...." 8 U.S.C. § 1101(a)(42)(A). The question here is whether Nelson has sufficiently proven past persecution, or a well-founded fear of future persecution, to make her eligible for asylum. We review the BIA decision denying asylum under the substantial evidence test, asking if the decision is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4).[4] This standard only permits reversal of a BIA decision "when the record evidence would compel a reasonable factfinder to make a contrary determination." *Aguilar–Solís v. INS*, 168 F.3d 565, 569 (1st Cir.1999) (citing *INS v. Elías–Zacarías*,

502 U.S. 478, 481 & n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992)).

### A.  Past Persecution

■ Although INS regulations establish that past persecution, standing alone, is sufficient to establish asylum eligibility, they provide little insight on what constitutes "past persecution," leaving that to judicial exposition. *See* 8 C.F.R. § 208.13(b); *Acewicz v. INS*, 984 F.2d 1056, 1062 (9th Cir.1993). To qualify as persecution, a person's experience must rise above unpleasantness, harassment, and even basic suffering. *See Aguilar–Solís*, 168 F.3d at 570 (although petitioner need not prove threats to life or freedom to show persecution, petitioner must prove more than "harassment or annoyance"). Cases from both this Court and other circuits indicate the difficulty of proving past persecution. *Compare Fergiste v. INS*, 138 F.3d 14, 17–18 (1st Cir.1998) (persecution found where petitioner had been shot in the shoulder, petitioner's aunt had been arbitrarily murdered in petitioner's home, and close political allies had been shot and killed) *with Ravindran v. INS*, 976 F.2d 754, 756–60 (1st Cir.1992) (persecution *not* found where member of minority ethnic group had been interrogated and beaten for three days in prison and warned about pursuing political activities). *See also Acewicz*, 984 F.2d at 1062 (approving BIA finding of persecution in *Matter of Chen*, Int. Dec. 3104 at 4 (1989), where child was tortured, harassed, and deprived of food and medical attention from age 8, and his father systematically tortured for eight years); *Kapcia v. INS*, 944 F.2d 702, 704,

4. The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. No. 104–208, Div. C., 110 Stat. 3009–546, substantially revised the Immigration and Nationality Act, including the standard of review applicable to cases such as this one. *See id.* § 306(a)(2), 110 Stat. 3009–608. However, IIRIRA's transition rules give continued vitality to several sections of the prior law when deportation proceedings were commenced prior to April 1, 1997. *See id.* § 309(a)(1), 110 Stat. 3009–625. Although Nelson's first immigration hearing was held

on January 2, 1996, well before the enactment of IIRIRA, the hearing from which she appeals was not held until April 2, 1997, one day after the transition period had ended. Although it appears that Nelson's case should be decided under the pre-IIRIRA standard of review, we need not decide which standard of review applies for purposes of this case. Because she cannot meet the requirements of the substantial evidence test, she will also not be able to reach the more stringent requirements of the now applicable standard codified at 8 U.S.C. § 1252(b)(4).

708 (10th Cir.1991) (no finding of past persecution where one petitioner was "arrested four times, detained three times, and beaten once," and another "was detained for a two-day period during which time he was interrogated and beaten" and warned not to continue his political activities); *Kubon v. INS*, 913 F.2d 386, 388 (7th Cir. 1990) ("brief confinement for political opposition to a totalitarian regime does not necessarily constitute persecution"); *Desir v. Ilchert*, 840 F.2d 723, 729 (9th Cir.1988) ("beatings, arrests and assaults" sufficient to establish past persecution, in context of ongoing extortion by Haitian police).

■ We cannot conclude that a reasonable factfinder would have been compelled to make a contrary decision to that made here by the BIA. As presented in the light most favorable to Nelson,[5] the record indicates three episodes of solitary confinement of less than 72 hours, each accompanied by physical abuse. Nelson also claims regular harassment in the form of periodic surveillance, threatening phone calls, occasional stops and searches, and visits to her place of work. Nelson was never charged with any crime and never sought medical attention in Suriname, and her affidavit does not indicate that any harassment took place after 1990. Although Nelson's story is undoubtedly unfortunate, we cannot conclude that it extends so far beyond "harassment and annoyance" so as to compel a reasonable factfinder to find past persecution.

## B. Well–Founded Fear of Future Persecution

■ An applicant for asylum may also qualify for refugee status if she demonstrates a "well-founded fear of future

persecution." 8 U.S.C. § 1101(a)(42)(A). Applicants who establish past persecution are presumed to have a well-founded fear of future persecution unless the INS proves otherwise by a preponderance of the evidence. *See* 8 C.F.R. § 208.13(b)(1)(i). However, Nelson has not established past persecution, and thus is not entitled to this presumption. An applicant can also establish a well-founded fear of persecution if (1) she has a fear of persecution in her country of origin; (2) there exists a reasonable probability that she will suffer persecution if she returns; and (3) she is unable or unwilling to return to her country due to that fear. *See* 8 C.F.R. § 208.13(b)(2). The applicant need not demonstrate a "clear probability" of future persecution, nor even that it is "more likely than not" that future persecution will take place. *Cardoza–Fonseca*, 480 U.S. at 431–32, 107 S.Ct. 1207. This Court "narrow[s] the relevant inquiry to whether a reasonable person ... would fear persecution on account of a statutorily protected ground." *Aguilar–Solís*, 168 F.3d at 572. In other words, "the asylum's applicant's fear must be both genuine and objectively reasonable." *Id.* (citing *Alvarez–Flores v. INS*, 909 F.2d 1, 5 (1st Cir. 1990)).

■ We cannot say that the BIA was compelled to find that Nelson had demonstrated a well-founded fear of persecution. On a subjective level, the strength of Nelson's fear was questionable. She had introduced testimony at her original hearing that she moved to the United States "to have a quiet life ... and bring up her children." Objectively, any fear that Nelson genuinely had was not "well-founded." The alleged detentions had taken place

5. Nelson has introduced several versions of facts. The BIA addressed an affidavit submitted between Nelson's deportation hearing and her appeal, concluding that it was "more detailed" but "not materially different" than the facts adduced at her April 2, 1997 hearing. As we have found no violation of Nelson's due process rights that would indicate a need for further fact finding, *see supra*, we address the facts presented in the affidavit to determine if the BIA erred. Nelson also has made a so-called "Offer of Proof" before this Court, which she promises will "reveal a much more complete account of her travails." Even were this unorthodox "Offer" a signed affidavit, which it is not, we need not consider it upon appeal given the finding of due process below.

more than four years prior to her request for asylum, the Suriname government has since converted from dictatorship to democracy, and while human rights abuses have not subsided entirely, they have diminished. *See generally* U.S. Department of State, *1999 Country Reports on Human Rights Practices, Suriname* [hereinafter, Suriname Country Report]; *see also Aguilar–Solis*, 168 F.3d at 572 ("Changed country conditions often speak volumes about the objective reasonableness of an alien's fear that persecution lurks should he return to his homeland."). The BIA reasonably could have concluded that Nelson could have returned to Suriname without facing future persecution.

## CONCLUSION

■ There is no doubt that human rights abuses have occurred in Suriname in the past. *See* Suriname Country Report at 2. It is very likely that Ms. Nelson, as a political activist and supporter of women's rights, was unable entirely to avoid encounters with hostile government officials. However, the threshold for asylum is a difficult one to meet, and persecution requires more than occasional detention, and, indeed, more than occasional instances of physical abuse. Nelson has not met her burden. Because we find that her due process rights have not been violated, and that she does not qualify as a refugee pursuant to 8 U.S.C. § 1101(a)(42)(A), we **affirm** the decision of the BIA.