[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 19, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-12505
Non-Argument Calendar
_____

Agency Nos. A79-475-106
& A79-475-107

RICARDO ANTONIO ZUNIGA-MURILLO,
MARTHA HELENA MOLINA-VELASCO,

Petitioners,

versus

U. S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(May 19, 2005)**

Before BIRCH, DUBINA and BARKETT, Circuit Judges.

PER CURIAM:

Petitioners Ricardo Antonio Zuniga-Murillo and Martha Helena Molina-Velasco, through counsel, petition for review of the Board of Immigration Appeals's ("BIA") order affirming the Immigration Judge's ("IJ") denial of asylum and withholding of removal under the Immigration Nationality Act ("INA") and the United Nations Convention Against Torture and other Cruel, Inhumane, and Degrading Treatment or Punishment ("CAT"). Zuniga-Murillo's[1] removal proceedings commenced after April 1, 1997. Therefore, the permanent rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 (1996) ("IIRIRA") apply.

Zuniga-Murillo asserts that the BIA erred by affirming the IJ's denial of his asylum application because he was persecuted on account of his political opinion. Zuniga-Murillo maintains that "[he] testified regarding the problems inherent in refusing to cooperate with the [Revolutionary Armed Forces of Colombia ("FARC")] in the overthrow of the Colombian government." Zuniga-Murillo asserts that he was entitled to have his asylum claim reviewed under the "reasonable possibility" standard, and that "given the contents of the record," he met this burden of proof.

---

[1] Zuniga-Murillo is the primary applicant. His wife is a derivative applicant and, therefore, relies on Zuniga-Murillo's asylum application. Accordingly, we will only refer to Zuniga-Murillo and his claims for relief.

2

Zuniga-Murillo also argues that the BIA applied an incorrect and higher standard of proof to his asylum claim, namely, the "clear probability of persecution standard." Zuniga-Murillo contends that the IJ failed to consider the possibility of future persecution and based his decision to deny Zuniga-Murillo's asylum claim on his failure to show (a) past persecution, and (b) "that they will necessarily be in significant danger if forced to return to Colombia." Zuniga-Murillo maintains that based on the evidence presented at his asylum hearing, the IJ should have concluded that Zuniga-Murillo had a well-founded fear of future persecution.

As an initial matter, Zuniga-Murillo abandoned his claims for withholding of removal under the INA and relief under the CAT by failing to raise any argument on these claims in his appellate brief. *Sepulveda v. U.S. Attorney Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (stating that "[w]hen an appellant fails to offer argument on an issue, that issue is abandoned").

When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). In this case, the BIA both appeared to adopt the IJ's decision and made some of its own observations, so we will review both. To the extent that the BIA's decision was based on a legal determination, review is *de novo*. *Mohammed v. Ashcroft*, 261 F.3d 1244, 1247-48 (11th Cir. 2001). The

BIA's factual determinations are reviewed under the substantial evidence test, and we "must affirm the BIA's decision if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Al Najjar*, 257 F.3d at 1284 (citation omitted). Further, the BIA's decision can only be reversed if the applicant's evidence "is so powerful that a reasonable factfinder would *have* to conclude that the requisite fear of persecution exists." *Mazariegos v. Office of the U. S. Attorney Gen.*, 241 F.3d 1320, 1323-24 (11th Cir. 2001) (emphasis in original). The INA states that "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." INA § 242(b)(4)(B), 8 U.S.C. § 1252(b)(4)(B).

Any alien who is physically present in or arrives in the United States may apply for asylum. INA § 208(a)(1), 8 U.S.C. § 1158(a)(1). An alien may obtain asylum if he is a refugee within the meaning of INA § 101(a)(42)(A), 8 U.S.C. §1101(a)(42)(A). A "refugee" includes any person who is unwilling to return to, and is unable or unwilling to avail himself of the protection of, the country of his nationality or where he last habitually resided, because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *Id*. The burden of proof is on the alien to establish that he is a refugee. 8 C.F.R. § 208.13(a). An alien may establish

4

eligibility for asylum if he shows that he has suffered past persecution or has a well-founded fear of future persecution. *Id.* § 208.13(b); *Al Najjar*, 257 at 1287. While the INA does not define persecution, we have discussed other Circuits' holdings that persecution is an "extreme concept," that mere harassment is not persecution, and that persecution requires "more than a few isolated incidents of verbal harassment or intimidation." *Sepulveda*, 401 F.3d at 1231; *see also Nelson v. INS*, 232 F.3d 258, 263 (1st Cir. 2000) (persecution "must rise above unpleasantness, harassment, and even basic suffering"). Other courts have generally held that persecution is "punishment or the infliction of harm for political, religious, or other reasons that this country does not recognize as legitimate." *See*, *e.g. Tamas-Mercea v. Reno*, 222 F.3d 417, 424 (7th Cir. 2000) (citation omitted). "Persecution encompasses more than threats to life or freedom; non-life threatening violence and physical abuse also fall within this category." *Id.*

Past persecution includes persecution that occurred in the applicant's country in the past "on account of . . . political opinion," and the applicant "is unable or unwilling to return to, or avail himself . . . of the protection of, that country owing to such persecution." 8 C.F.R. § 208.13(b)(1). A "well-founded fear" of persecution may be established by showing, (1) past persecution that creates a presumption of a "well-founded fear" of future persecution, which may

5

be rebutted with proof that, *inter alia*, the alien could relocate and it would be reasonable to expect the alien to do so; (2) a reasonable possibility of future personal persecution that cannot be avoided by relocating within the subject country; or (3) a pattern or practice in the subject country of persecuting members of a statutorily defined group of which he is part. 8 C.F.R. § 208.13(b)(1) & (2); *Sepulveda*, 401 F.3d at 1231. The well-founded fear inquiry requires the alien to demonstrate that his or her fear of persecution "is subjectively genuine and objectively reasonable." *Sepulveda*, 401 F.3d at 1231. Further, the alien must establish a causal connection between the statutory ground and the feared persecution by presenting "specific, detailed facts showing a good reason to fear that he or she will be *singled out* for persecution on account of [the statutory ground]." *Id.* (emphasis in original) (citing *Al Najjar*, 257 F.3d at 1287).

We have stated that an imputed political opinion, even if it is incorrectly attributed, can be a ground for the well-founded fear standard. *Al Najjar*, 257 F.3d at 1289. In order to prevail, the alien must demonstrate that "the persecutor falsely attributed an opinion to him, and then persecuted him because of that mistaken belief about his views." *Id.* (citation omitted and marks omitted). If the alien establishes that the persecutor imputed a political opinion to him, the alien would still be required to demonstrate that he has a well-founded fear of persecution

6

because of that imputed opinion. *See id.*

After reviewing the record, we conclude that even if Zuniga-Murillo could prove that the actions taken against him were on account of his political opinion, imputed or otherwise, substantial evidence supports the BIA's determination that he has failed to establish either past persecution or a well-founded fear of future persecution on account of his political opinions. Zuniga-Murillo testified that he received threatening phone calls from the FARC after declining additional work. However, Zuniga-Murillo never testified that he was physically harmed, kidnaped, or abused. Rather he testified that the FARC harassed him. In fact, Zuniga-Murillo did not have any face-to-face encounters with any member of the FARC after his initial visit to the farm where he performed work. Also, Zuniga-Murillo stated that members of his family remain in Colombia, and they have not received any telephone calls or inquiries as to his whereabouts. Zuniga-Murillo has failed to present specific, detailed facts showing a good reason to fear that he will be singled out for persecution because of his political opinion. Although Zuniga-Murillo testified that after leaving Colombia former co-workers told him that members of the FARC were looking for him, the substantial evidence in the record supports the BIA's findings, and a reasonable factfinder would not be compelled to disagree.

7

Additionally, we conclude that the BIA and IJ applied the appropriate legal standard in reviewing Zuniga-Murillo's asylum application. First, the IJ specifically identified *INS v. Cardoza-Fonseca*, 480 U.S. 421, 449- 450, 107 S.Ct. 1207, 1222, 94 L.Ed.2d 434 (1987) (holding that in order to show a well-founded fear of persecution, the standard applicable to asylum claims, the petitioner need not demonstrate that he more-likely-than-not would be persecuted upon return to the country in question, the standard applicable to withholding of removal claims), as the applicable standard and analyzed Zuniga-Murillo's asylum claim as one seeking to demonstrate a well-founded fear of future persecution on account of political opinion. The IJ found that Zuniga-Murillo's well-founded fear of persecution was diminished because his relatives remained in Colombia and lived openly without disturbance. Additionally, although the IJ noted that the FARC never harassed Zuniga-Murillo, and the telephone calls from the FARC "were intended to essentially motivate him to assist," it was well within the IJ's discretion to consider Zuniga-Murillo's claims of past persecution in determining whether his fear was objectively reasonable to compel a finding that he had a well-founded fear of future persecution. Moreover, nothing in the record supports Zuniga-Murillo's assertion that the IJ denied his asylum claim based on his failure to show a "significant danger" if forced to return to Colombia. Accordingly, Zuniga-

8

Murillo's claim regarding the appropriateness of the legal standard applied to his asylum application is without any foundation.

For the foregoing reasons, we deny the petition for review.

**PETITION DENIED.**