[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 20, 2005
THOMAS  K. KAHN
CLERK

No. 04-12785
Non-Argument Calendar

Agency  Docket Nos. A79-340-134
& A79-340-135

MAURO NERY HERNANDEZ RUBIO,
ZORAIDA MERCEDES SAAVEDRA SUAREZ, et al.,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision
of the Board of Immigration Appeals

_____

**(May 20, 2005)**

Before ANDERSON, BLACK and CARNES, Circuit Judges.

PER CURIAM:

Mauro Nery Hernandez Rubio, on behalf of himself, his wife, Zoraida Mercedes Saavedra Suarez, and his two children, Diana C. Hernandez Saavedra and Christian M. Hernandez Saavedra, petitions for review of the Board of Immigration Appeals's order affirming the immigration judge's denial of asylum, withholding of removal, and relief under the Convention Against Torture.[1]

## I.

Rubio is a Colombian citizen. In his hometown in Colombia, he was a community leader and a spokesmen for the Liberal Party. As part of Colombia's 2000 presidential election, Rubio spoke at a campaign event in support of the Liberal Party presidential candidate.

At the August 7, 1999 event, one of the members of the audience asked him what he thought of the continuing violence in Colombia. Rubio responded that he did not care for the communist politics of the guerilla groups responsible for the violence. He recommended that Colombia call upon other nations, including the United States, to help fight the guerrilla groups.

After the speech, Rubio began receiving threatening phone calls from persons identifying themselves as members of the FARC guerilla group. Scared

---

[1] Rubio is the primary applicant. His wife and children are derivative applicants, and, therefore, rely on Rubio's application. For that reason and for convenience of reference, we will only refer to Rubio and his claims.

for the safety of his family, he transferred his children to a local private school and moved with his family to the house of a nearby relative. Over the next two months, Rubio received eight such phone calls.

Then, on October 11, 1999, Rubio was shot at by two men on a motorcycle while on his way to work. He managed to duck out of the way and escaped unharmed. Rubio decided to leave Colombia after this incident. He took his children out of school, packed up his papers and effects, and left for the United States on December 4, 1999.

Rubio filed for asylum, withholding of removal, and relief under the CAT on February 5, 2001. By then, however, his visa had expired, and the Immigration and Naturalization Service charged him with removability, pursuant to 8 U.S.C. § 1227(a)(1)(B). Rubio concedes that he is removable.

The IJ, after reviewing the written record and taking live testimony, denied Rubio's application in full. Rubio appealed to the BIA, which "affirm[ed] the Immigration Judge's finding that the application for asylum is untimely." The BIA also held that the threatening phone calls and the October 11, 1999 shooting incident did "not rise to the level so as to amount to persecution" as that term is defined by the Immigration and Naturalization Act for withholding of removal and

relief under the CAT. Rubio appeals this decision here, and contends that both holdings are in error.

## II.

Rubio first contends that the BIA denied him due process by refusing to review his application for asylum as untimely. He frames the issue as violating due process, noting that we have jurisdiction to review constitutional claims. See 8 U.S.C. § 1252(a)(2)(B); Gonzalez-Oropeza v. U.S. Attorney Gen., 321 F.3d 1331, 1333 (11th Cir. 2003) (per curiam).

For an alien to be eligible for asylum, he must establish by clear and convincing evidence that his application was filed within one year of his arrival in the United States. 8 U.S.C. § 1158(a)(2)(B). If the alien files the application after the one year deadline, his tardiness may be excused if he alleges extraordinary circumstances which prevented him from timely filing the application. Id. § 1158(a)(2)(D). However, once the Attorney General, through the BIA, decides that an alien did not have extraordinary circumstances which excuse his tardiness, "no court shall have jurisdiction to review" such determination. Id. § 1158(a)(3); see also Mendoza v. U.S. Attorney Gen., 327 F.3d 1238, 1287 (11th Cir. 2003) ("This Court already has determined that section 1158(a)(3) divests our Court of jurisdiction to review a decision regarding whether an alien complied with the

one-year time limit or established extraordinary circumstances that would excuse his untimely filing.").

Here, Rubio entered the United States on December 4, 1999. He filed his application for asylum on February 5, 2001, more than one year after he entered the country. Rubio asked the IJ to excuse his tardiness because he consulted attorneys who told him not to file his asylum application. The IJ found that this was not an extraordinary circumstance because Rubio did not file a complaint against his attorneys with the Florida Bar, as required by BIA precedent. Without such a complaint, the IJ could not take seriously Rubio's assertion that he received ineffective assistance of counsel. The BIA affirmed for the same reason.

We do not have jurisdiction to review that decision. See 8 U.S.C. § 1158(a)(3); Mendoza, 327 F.3d at 1287. Rubio's attempt to dress up his meritless claim as a due process violation, while resourceful, does not create jurisdiction where there is none otherwise. See Gonzalez-Oropeza, 321 F.3d at 1333 (For review of asylum claims, "[w]here a constitutional claim has no merit . . . we do not have jurisdiction.").

### III.

Rubio also contends that the BIA erred in determining that he was not entitled to withholding of removal and relief under the CAT because "the reported

actions [the threatening phone calls and the shooting incident] do not rise to the level so as to amount to persecution" as defined by the immigration statutes.

We review the BIA's findings of fact under the substantial evidence test, and we "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Sepulveda v. U.S. Attorney Gen., No. 03-14932, 2005 WL 477878, at *2 (11th Cir. March 2, 2005) (quotation omitted). "Under this highly deferential standard of review, the [BIA]'s decision can be reversed only if the evidence compels a reasonable fact finder to find otherwise." Id. (quotation omitted).

As to withholding of removal, an alien shall not be removed to a country if his life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3). The alien has the burden to show that it is "more likely than not that [he] will be persecuted or tortured upon being returned to [his] country." Sepulveda, 2005 WL 477878, at *5. If the alien establishes past persecution, it is presumed that his life or freedom would be threatened upon return to his country. 8 C.F.R. § 208.16(b).

While the immigration statutes do not define persecution, courts have generally held that persecution is "punishment or the infliction of harm for

6

political, religious, or other reasons that this country does not recognize as legitimate." See, e.g., Tamas-Mercea v. Reno, 222 F.3d 417, 424 (7th Cir. 2000). But, mere harassment is not persecution. Persecution requires "more than a few isolated incidents of verbal harassment or intimidation." Sepulveda, 2005 WL 477878, at *3; see also Nelson v. Immigration & Naturalization Serv., 232 F.3d 258, 263 (1st Cir. 2000) (persecution "must rise above unpleasantness, harassment, and even basic suffering").

The same is true for relief under the CAT. The alien must establish that it is more likely than not that he would be tortured if returned to the proposed country of removal. Id. The CAT defines torture as:

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 208.18(a)(1).

Substantial evidence exists to support the BIA's decision that Rubio was not entitled to withholding of removal or relief under the CAT. We have held that

past incidents similar to Rubio's do not rise to the level of persecution and torture. See Sepulveda, 2005 WL 477878, at *3; see also Nelson, 232 F.3d at 263.

Moreover, like the BIA, we are not convinced that Rubio would more likely than not be subject to persecution and torture on his return to Colombia. The 1997 Profile on Asylum Claims for Colombia, which Rubio introduced at his hearing, notes that the Colombian government has been more vigilant about cracking down on guerilla violence, and, in certain parts of the country, the violence has effectively stopped. Rubio did not report the harassing phone calls or shooting incident to the local authorities so that they could investigate and prosecute the perpetrators. Nor did Rubio first try to move away from the violence, rather than flee directly to the United States. Given both unexplored options, we cannot say it is "more likely than not" that Rubio will face persecution and torture in Colombia upon his return.

## IV.

For the foregoing reasons, we deny Rubio's petition for review of the BIA's order affirming the IJ's denial of withholding of removal and relief under the CAT. We also dismiss for lack of jurisdiction that part of Rubio's petition seeking review of the BIA's order affirming the IJ's decision to deny his application for asylum as untimely.

PETITION DISMISSED IN PART AND DENIED IN PART.

8