[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 8, 2005
THOMAS K. KAHN
CLERK

No. 04-11796
Non-Argument Calendar

_____

Agency  Docket No. A79-497-701

FERNANDO ROJAS,

Petitioner,

versus

UNITED STATES ATTORNEY GENERAL,

Respondent.

_____

Petition for Review from a Final Order
of the Board of Immigration Appeals

_____

(June 8, 2005)

Before TJOFLAT, DUBINA, and HULL, Circuit Judges.

PER CURIAM:

Fernando Rojas, a Colombian citizen appearing with counsel, petitions for

review of the Board of Immigration Appeals' ("BIA's") order affirming the

Immigration Judge's ("IJ's") denial of asylum and withholding of removal under the Immigration Nationality Act ("INA") and the United Nations Convention Against Torture and other Cruel, Inhumane, and Degrading Treatment or Punishment ("CAT"). After review, we deny Rojas's petition.[1]

## I. BACKGROUND

On or about September 12, 2000, Rojas was admitted to the United States on a six-month visa, with authorization to remain until March 11, 2001. Rojas then remained in the United States beyond that period without authorization from the Immigration and Naturalization Service ("INS"). On October 29, 2001, the INS served Rojas with a notice to appear ("NTA") charging that he was removable because he remained in the United States for a time longer than permitted, in violation of INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B). At an April 25, 2002, hearing, Rojas appeared with counsel and conceded the allegations in the NTA and conceded removability. However, Rojas filed an application for asylum, withholding of removal, and CAT protection.

### A. Rojas's Evidence

---

[1] Because Rojas's removal proceedings commenced after April 1, 1997, the permanent rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Publ. L. No. 104-208, 110 Stat. 3009 (1996) apply. Sanchez v. United States Att'y Gen., 392 F.3d 434, 435 (11th Cir. 2004).

On September 25, 2002, the IJ held a hearing regarding Rojas's application. Rojas testified that he was persecuted in Colombia on account of his political opinion.[2]  Specifically, Rojas testified that he was harassed, threatened, and persecuted by the Revolutionary Armed Forces of Colombia ("FARC") based on his association with the Liberal Party and his efforts to maintain democracy in Colombia.

Rojas testified, consistent with his asylum application, that he joined the Liberal Party in 1985 because his father was a party leader.  He helped with election campaigns and recruitment and supported the party with his computer expertise.  In March 1998, Rojas and several family members were headed back to Bogota from a political youth meeting when they were stopped by FARC guerrillas.  The FARC took their identification documents, separated them, and asked them questions about their activities.  The FARC also said they were offended because of Rojas's and his companions' political activities, and told them that they were to stop telling the youth about their political party, but instead recruit them into the FARC.  The FARC told them that they would all be under

---

[2]Rojas also submitted, the evening before the hearing, a statement describing his alleged persecution and death threats in Colombia.  The IJ noted that his testimony at the hearing was consistent with this statement.

surveillance, and if they informed the authorities about the incident, they could consider themselves dead.

Rojas worked as a computer technician for a company whose clients included Colombian politicians and Colombian government agencies. In March or April following the above incident, Rojas received phone calls at his office from persons asking questions that a normal customer would not ask, including questions about the company's owners and clients.

Rojas subsequently moved from Bogota to Medellin, where he opened a new company and again became involved in politics. He participated in political campaigns, health brigades, and administrative activities, and also provided computer support to the Liberal Party and provided computers and computer training to school students. Rojas testified that he received numerous threats from FARC guerrillas for supporting the Liberal Party and teaching the youth computer skills. He indicated that the guerillas had infiltrated everywhere and could easily learn of his activities.

On August 19, 2000, Rojas was at a public political meeting speaking about the campaign platform of Dr. Alvaro Uribe,[3] who was running for president of Colombia, and about the guerillas. At the end of the meeting, two men

_____

[3]Uribe is the current president of Colombia.

approached him and told him to stop speaking out against them and participating in the Liberal Party, and that if he reported the threat, they would find him and harm him or his family.

On September 8, 2000, Rojas called his office and his secretary told him that two men from the FARC had come to the office looking for him, searched the office, been vulgar towards her, and told her to tell him that they would find him. Later that evening, Rojas received a phone call at home from someone declaring him a "military objective."

Following that phone call, Rojas and his wife went to a friend's house, and the next day Rojas left for Bogota, where he stayed with a friend and purchased a ticket to the United States.[4]  Rojas's wife remained in her mother's house in Medellin.  Rojas testified that after he left, his office received several phone calls asking when he would return, and testified that if he returned to Colombia, he would be killed.

On cross-examination, Rojas stated that his wife still lives in Medellin and his parents and two sisters still live in Bogota.  He further admitted that he had no problems in Colombia from April of 1998 until August of 2000 and that he never

---

[4]Rojas had obtained a visitor's visa in 1999.

informed the authorities about what had happened to him because he thought they could be infiltrated by the guerrillas.

In addition to Rojas's testimony, the record also included the following relevant evidence: (1) a certified statement from a representative of the department of Antioquia, the department in which Rojas resided, stating that threats by "subversive groups" against Rojas's life and his family's lives forced him to leave the country; (2) a declaration by the friend with whom Rojas stayed in Medellin before leaving Colombia, stating that threats against Rojas's life because of his political activities forced him to leave Colombia; and (3) the 2001 State Department Country Report for Colombia, which states that the FARC regularly attacked civilian populations; that the guerillas were responsible for the majority of the kidnapings; that common guerilla targets included elected officials, candidates for public office, and civic leaders; that kidnaping is a major source of money for the FARC; and that the FARC undertook armed actions in nearly 1,000 of the country's 1,097 municipalities.

## B. IJ's Decision

The IJ concluded that Rojas was not entitled to asylum because he had not established that he had a well-founded fear of persecution if he returned to Colombia because: (1) Rojas failed to establish that he could not safely relocate

6

within Colombia; (2) Rojas never contacted the authorities to seek protection; and (3) his wife and parents remain in Colombia without any problems. The IJ further concluded that the threats he received did not rise to the level of past persecution.

The IJ further concluded that Rojas had failed to satisfy the higher standard required for withholding of removal and did not qualify for CAT protection.

### C. BIA Appeal

The BIA affirmed the IJ's decision without opinion, and Rojas now petitions this Court for review.

## II. STANDARD OF REVIEW

The IJ's factual determination that an alien is not entitled to asylum must be upheld if it is supported by substantial evidence. See D-Muhumed v. United States Att'y Gen., 388 F.3d 814, 817-18 (11th Cir. 2004); cf. 8 U.S.C. § 1252(b)(4)(B) (providing that "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary"). Under this highly deferential standard of review, a denial of asylum may be reversed only if the evidence would compel a reasonable factfinder to find

that the requisite fear of persecution exists.  INS v. Elias-Zacarias, 502 U.S. 478,

481 n.1, 112 S. Ct. 812, 815 n.1 (1992).[5]

## III.  DISCUSSION

On appeal, Rojas asserts that the IJ erred in denying his asylum claim based

on the fact that he failed to establish that he faced past persecution or had a well-

founded fear of persecution.[6]

An alien who arrives in or is present in the United States may apply for

asylum.  See 8 U.S.C. § 1158(a)(1).  However, the Attorney General has discretion

to grant asylum only if the alien meets the INA's definition of a "refugee."  See 8

U.S.C. § 1158(b)(1).

A "refugee" is:

> any person who is outside any country of such person's nationality or,
> in the case of a person having no nationality, is outside any country in
> which such person last habitually resided, and who is unable or
> unwilling to return to, and is unable or unwilling to avail himself or

---

[5]"When the BIA summarily affirms the IJ's decision without opinion, the IJ's decision becomes the final removal order subject to review."  Sepulveda v. United States Att'y Gen., 401 F.3d 1226, 1230 (11th Cir. 2005) (citation omitted).

[6] On appeal, Rojas failed to argue his withholding of removal and CAT claims.  Those issues are waived, and we need not consider them.  See Rowe v. Schreiber, 139 F.3d 1381, 1382 n.1 (11th Cir. 1998) (holding that issues not argued on appeal are deemed waived).  Therefore, the only issue on appeal is whether the IJ erred in denying Rojas's asylum claim.  In any event, because he failed to establish eligibility for asylum, he also fails to satisfy eligibility for withholding of removal or CAT relief.  Nreka v. United States Att'y Gen., — F.3d —, No. 04-10009 (11th Cir. May 16, 2005).

herself of the protection of, that country because of <u>persecution or a well-founded fear of persecution on account of</u> race, religion, nationality, membership in a particular social group, or <u>political opinion</u> . . . .

8 U.S.C. § 1101(a)(42)(A) (emphasis added). The asylum applicant carries the burden of proving statutory "refugee" status. <u>Al Najjar v. Ashcroft</u>, 257 F.3d 1262, 1284 (11th Cir. 2001).

An alien is a "refugee" and therefore eligible for asylum if he can establish, with specific and credible evidence: (1) past persecution on account of his political opinion or other statutorily listed factor; or (2) a "well-founded fear" that his political opinion or other statutorily listed factor will cause future persecution. 8 C.F.R. § 208.13(a), (b); <u>see also</u> <u>Al Najjar</u>, 257 F.3d at 1287. While the INA does not define persecution, this Court previously has recognized that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution." <u>Sepulveda v. United States Att'y Gen.</u>, 401 F.3d 1226, 1231 (11th Cir. 2005) (internal quotation marks, brackets, and citations omitted); <u>see also</u> <u>Gonzalez v. Reno</u>, 212 F.3d 1338, 1355 (11th Cir. 2000) (collecting cases); <u>Nelson v. INS</u>, 232 F.3d 258, 263 (1st Cir. 2000) (persecution "must rise above unpleasantness, harassment, and even basic suffering").

9

If the alien demonstrates past persecution, he is also presumed to have a well-founded fear of future persecution unless the government can rebut the presumption. 8 C.F.R § 208.13(b)(1). If, however, the alien does not establish past persecution, he bears the burden of demonstrating a well-founded fear of future persecution by showing that: (1) he fears persecution based on his political opinion; (2) there is a reasonable possibility he will suffer persecution in his home country; and (3) he could not avoid persecution by relocating to another part of that country, if under all the circumstances it would be reasonable to expect him to do so. See 8 C.F.R. § 208.13(b)(2), (b)(3)(i). "[A]n applicant must demonstrate that his or her fear of persecution is subjectively genuine and objectively reasonable." Al Najjar, 257 F.3d at 1284. Establishing a nexus between the statutorily listed factor and the feared persecution "requires the alien to present specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution on account of such [a factor]." D-Muhumed, 388 F.3d at 818.

Rojas failed to establish that he faced past persecution. Although he was detained by the FARC at a roadblock and received several threatening phone calls, mere threats and harassment do not constitute persecution. See Sepulveda, 401 F.3d at 1231. Rojas does not contend that he suffered any harm beyond threats and the brief detention at the roadblock in 1998. Accordingly, substantial

evidence supports the IJ's decision that Rojas did not demonstrate that he faced past persecution. See Tawm v. Ashcroft, 363 F.3d 740, 742-44 (8th Cir. 2004) (no past persecution where alien was twice detained briefly and lightly beaten but sustained no serious injury); see also Nelson, 232 F.3d at 264 (no past persecution where alien was three times placed in solitary confinement and physically abused, and subjected to periodic surveillance, threatening phone calls, occasional stops and searches and visits to her place of employment).

As for Rojas's argument that he has a well-founded fear of future persecution, substantial evidence supports the IJ's determination that Rojas failed to establish a reasonable possibility that he would suffer persecution if he returned to Colombia. Although Rojas was affiliated with the Liberal Party and the guerrillas were aware of this affiliation, he was a self-described "low ranking political activist," and left Colombia nearly five years ago. The evidence thus does not compel the conclusion that Rojas "had a well-founded fear that the [FARC] retains an inclination to single [him] out for persecution."[7] Sepulveda, 401 F.3d at 1231-32. As Rojas admitted, his parents, sisters, one brother, and his wife have remained in Colombia without incident, despite the facts that his family

---

[7]Although we do not rely on it, we note that Rojas himself asserts in his brief that President Uribe, for whom Rojas campaigned, "has waged an effective and drastic military campaign against the FARC" since Rojas left Colombia.

has long been involved with the Liberal Party and that Rojas was scared for his wife's life.[8] See Tawm, 363 F.3d at 743 (finding that an alien did not establish a well-founded fear where, inter alia, the alien's family continued to live in Lebanon without incident). In addition, Rojas himself lived for years in Colombia without incident and never reported to the authorities the threats that he received. As a result, he has not shown that the Colombian government could not or would not offer him whatever protection, if any, he might need in Colombia. See Mazariegos v. United States Att'y Gen., 241 F.3d 1320, 1327 (11th Cir. 2001).

Under these circumstances, substantial evidence supports the IJ's decision that Rojas failed to meet his burden of proving that he faced past persecution or had a well-founded fear of persecution, and that he was, therefore, ineligible for asylum. See 8 C.F.R. § 208.13(b)(2)(i).[9]

Upon review of the record and the parties' briefs, we discern no reversible error. Accordingly, we deny Rojas's petition for review.

---

[8] Although Rojas argues that his parents are no longer politically active, the fact that they historically were active in the Liberal Party and have remained in Bogota without incident substantially undercuts Rojas's assertion that his fear of future persecution is reasonable.

[9] Rojas also challenges on appeal the application and constitutionality of the internal-relocation requirement. Because we conclude that Rojas failed to demonstrate past persecution or a well-founded fear of future persecution, we do not address this issue. See Sepulveda, 401 F.3d at 1231.

**PETITION DENIED.**