[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 04-15255
Non-Argument Calendar

————————————————

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 28, 2005
THOMAS K. KAHN
CLERK

Agency Docket Nos. A79-098-152
A79-098-153

BLANCA L. HINCAPIE-CADAVID,
JUAN FERNANDO BENAVIDES HINCAPIE, et al.,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

————————————————

Petition for Review from a Final Order
of the Board of Immigration Appeals

————————————————

(June 28, 2005)

Before BIRCH, HULL and WILSON, Circuit Judges.

PER CURIAM:

Blanca Hincapie-Cadavid, Juan Fernando Benavides Hincapie, and Sebastian Benavides Hincapie,[1] Colombian citizens appearing <u>pro se</u>, petition for review of the Board of Immigration Appeals' ("BIA") order affirming the Immigration Judge's ("IJ") denial of asylum and withholding of removal under the Immigration Nationality Act ("INA") and the United Nations Convention Against Torture and other Cruel, Inhumane, and Degrading Treatment or Punishment ("CAT").[2] The IJ's decision held that Hincapie-Cadavid was not entitled to asylum because she failed to demonstrate that she was targeted by the guerillas on account of her membership in a social group–i.e., convenience shop owners–as opposed to being targeted because of monetary or economic reasons. We **AFFIRM**.

---

[1] Hincapie-Cadavid is the primary applicant. Her children are derivative applicants, and, therefore, rely on Hincapie-Cadavid's asylum application. Accordingly, this opinion will refer to Hincapie-Cadavid and her claims for relief.

[2] Because Hincapie-Cadavid's removal proceedings commenced after 1 April 1997, the permanent rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. 104-208, 110 Stat. 3009 (1996), apply.

# I. BACKGROUND

On 19 March 2001, the Immigration and Naturalization Service ("INS")[3] served Hincapie-Cadavid with a notice to appear ("NTA") that charged her with (1) being an alien who, by fraud or willful misrepresentation of a material fact, sought to procure a visa, other documentation, or admission into the United States[4] in violation of INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i), and (2) being an immigrant who was not in possession of a valid entry document and a valid passport when she applied for admission into the United States, in violation of INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I). Additionally, the INS conducted a credible fear interview in which Hincapie-Cadavid indicated she had been persecuted by a guerilla group she referred to as "criminal leftists" on the basis of her political opinion. She indicated the guerillas stole from her, threatened her family, and extorted money from her.

Hincapie-Cadavid subsequently applied for asylum and withholding of removal based on her membership in a social group. On her application, she

---

[3] On 25 November 2002, President Bush signed into law the Homeland Security Act of 2002 ("HSA"), Pub. L. No. 107-296, 116 Stat. 2125. The HSA created a new Department of Homeland Security ("DHS"), abolished the INS, and transferred its functions to the new department. However, because this case was initiated while the INS was still in existence, this opinion refers to the agency as the INS.

[4] The NTA alleged that Hincapie-Cadavid misrepresented that she was a passenger without a visa enroute to Madrid, Spain, when her intentions were to remain in the United States.

claimed to be a small shopkeeper who was harassed by gangs of guerillas who demanded money from her. She claimed that another similarly situated shopkeeper who refused the demands of the gangs was killed in February of 2000 and that she feared the same fate if she returned to Colombia.

At the asylum hearing, Hincapie-Cadavid testified that she and her husband ran a small shop in Colombia for eight years. Further, she testified that they did not participate in any political, social, or labor groups. About two years before leaving Colombia, the guerillas began harassing her and her family by stealing her husband's motorcycle, extorting money from her, and robbing her store. During one robbery, the guerillas appeared in her store with machine guns and took all the money in the store. After this incident, she testified that she decided to leave Colombia.

In addition to her testimony, the 2002 State Department Country Report for Colombia was entered into the record at the asylum hearing. The report indicated that guerillas continued to target business owners and that kidnapping was a major source of revenue for the groups. Specifically, the Colombian Revolutionary Armed Forces ("FARC") had a policy to require persons with more than $1 million in assets to pay money to FARC or risk kidnapping.

After reviewing the evidence, the IJ concluded that Hincapie-Cadavid was not entitled to asylum because she failed to demonstrate that she was targeted by the guerillas on account of her status as a convenience shop owner, as opposed to being targeted because of monetary or economic reasons. The BIA affirmed without opinion.

## II. DISCUSSION

On appeal, Hincapie-Cadavid asserts that the IJ erred in concluding that she was not entitled to asylum on account of past persecution and a well-founded fear of persecution because the guerillas came into her store on several occasions and robbed her of her money, and had she not paid them, her children would have suffered. She also contends that the IJ erred in denying her withholding of removal claim.

A. <u>Asylum Claim</u>

On appeal, Hincapie-Cadavid argues that the IJ erred in concluding that she was not entitled to asylum because she failed to demonstrate that she was persecuted on account of her membership in a social group. The BIA's factual determinations are reviewed under the substantial evidence test, and we "'must affirm the [BIA's] decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" <u>Sepulveda v. United</u>

5

States Attorney Gen., 401 F.3d 1226, 1230 (11th Cir. 2005) (per curiam). We review only the BIA's decision, except when it adopts the IJ's decision, such that a review of that decision is warranted. Id. Under this highly deferential standard of review, the IJ's decision must be deferred to as supported by substantial evidence, unless the evidence compels a reasonable fact finder to find otherwise. Id.

An alien is eligible for asylum if she is a refugee within the meaning of INA § 101(a)(42)(A). INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). A "refugee" includes any person who is unwilling to return to, and is unable or unwilling to avail herself of the protection of, the country of her nationality or where she last habitually resided, because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). The burden of proof is on the alien to establish that she is a refugee. 8 C.F.R. § 208.13(a). An alien may establish eligibility for asylum if she shows that she has suffered past persecution or has a well-founded fear of future persecution. § 208.13(b); Al Najjar v. Ashcroft, 257 F.3d 1262, 1287 (11th Cir. 2001).

While the INA does not define persecution, courts have generally held that persecution is "punishment or the infliction of harm for political, religious, or other reasons that this country does not recognize as legitimate." See, e.g. Tamas-

6

Mercea v. Reno, 222 F.3d 417, 424 (7th Cir. 2000). "[P]ersecution encompasses more than threats to life or freedom; non-life threatening violence and physical abuse also fall within this category." Id. We have stated that mere harassment is not persecution, and persecution requires "'more than a few isolated incidents of verbal harassment or intimidation.'" Sepulveda, 401 F.3d at 1231; see also Nelson v. INS, 232 F.3d 258, 263 (1st Cir. 2000) (stating that persecution "must rise above unpleasantness, harassment, and even basic suffering").

Past persecution includes persecution that occurred in the applicant's country in the past "on account of . . . political opinion," and the applicant "is unable or unwilling to return to, or avail . . . himself of the protection of, that country owing to such persecution." 8 C.F.R. § 208.13(b)(1), (b)(2). A "well-founded fear" of persecution may be established by showing, (1) past persecution that creates a presumption of a "well-founded fear" of future persecution, which may be rebutted with proof that, inter alia, the alien could relocate and it would be reasonable to expect the alien to do so, (2) a reasonable possibility of future personal persecution that cannot be avoided by relocating within the subject country, or (3) a pattern or practice in the subject country of persecuting members of a statutorily defined group of which she is part. 8 C.F.R. § 208.13(b)(1) & (2). The well-founded fear inquiry requires the alien to demonstrate that his or her fear

7

of persecution "'is subjectively genuine and objectively reasonable.'" Sepulveda, 401 F.3d at 1231.

Further, the alien must establish a causal connection between the statutory ground and the feared persecution by presenting "'specific, detailed facts showing a good reason to fear that he or she will be *singled out* for persecution on account of [the statutory ground].'" Id. (emphasis in original). Finally, after establishing a well-founded fear of persecution, the alien must demonstrate that he or she cannot avoid the persecution by relocating within the country. Id.

In the case at bar, substantial evidence exists to support the IJ's decision that Hincapie-Cadavid was not targeted because of her status as a convenience shop owner but was targeted by the guerillas because of economic and monetary reasons. First, Hincapie-Cadavid admitted in her credible fear interview that the "criminal leftists" stole from her and made threatening phone calls demanding that she pay them money as a tax or protection money. Further, she stated that she was threatened by the guerillas who demanded money from her and threatened to kidnap her children.

Second, Hincapie-Cadavid admitted that the two times her family had come into contact with the guerillas, the guerillas either stole something or stole money from her store. She also testified that these people continued to demand money

8

from her and her husband, and that they were being extorted by the guerillas because their store made a lot of money. Although Hincapie-Cadavid stated that this was happening to other store owners, she never provided any evidence that the guerillas targeted her because she was a store owner, as opposed to targeting her because they wanted to obtain large amounts of money from her. Therefore, substantial evidence exists to support the IJ's conclusion that Hincapie-Cadavid was targeted for monetary or economic reasons, and not because she was a member of a social group.

B. <u>Withholding of Removal Claim</u>

Hincapie-Cadavid further contends that the IJ erred in denying her withholding of removal claim. In a withholding of removal claim, an alien will not be removed to a country if her life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. INA § 241(b)(3), 8 U.S.C. § 1231(b)(3)(A). The alien must show that it is "'more likely than not' that she will be persecuted or tortured upon being returned to her country." <u>Sepulveda</u>, 401 F.3d at 1232. The withholding of removal standard under the INA and the CAT is more stringent than the "well-founded fear" standard for asylum; thus, if an applicant is unable to meet the "well-founded fear" standard for asylum, she generally is unable to qualify for

9

withholding of removal. <u>Id.</u> at 1232-1233. A court may review a final order of removal only if the alien has exhausted all administrative remedies available to her as of right. <u>See</u> INA § 242(d)(1), 8 U.S.C. § 1252(d)(1); <u>see, e.g.</u>, <u>Boz v. United States</u>, 248 F.3d 1299, 1300-02 (11th Cir. 2001) (per curiam).

Hincapie-Cadavid's claim that she was entitled to withholding of removal under the INA and the CAT fails because she did not exhaust her administrative remedies regarding this claim. Although Hincapie-Cadavid submitted this claim to the IJ for review, she did not present her claim to the BIA for appellate review. Therefore, because she has not exhausted her administrative remedies, we may not review her claim.

### III. CONCLUSION

Upon review of the record and the parties' briefs, we discern no reversible error. Accordingly, we **AFFIRM** the decision of the BIA and **DENY** the petition for review.