[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 11, 2007
THOMAS K. KAHN
CLERK

No. 06-13760
Non-Argument Calendar

_____

BIA Nos. A79-343-157 & A27-218-714

SANDRA VARELA-JIMENEZ,
NESTOR VASQUEZ-VARGAS,
JOHAN S. VASQUEZ-VARELA,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(January 11, 2007)**

Before TJOFLAT, BIRCH and WILSON, Circuit Judges.

PER CURIAM:

The Petitioners are natives and citizens of Colombia, S.A. Sandra Varela

Jimenez ("Varela") is the lead petitioner. She and her son, Johan Sebastian Vasquez Varela ("Johan"), were admitted to the United States in Miami, Florida on April 29, 2000, as non-immigrant visitors with authorization to remain until October 28, 2000. Varela's husband, Nestor Vasquez Vargas ("Vasquez"), had been admitted to the United States in Los Angeles, California on October 15, 1999, as a visitor for pleasure with authorization to remain until April 14, 2000.

On February 23, 2001, Varela filed an application for asylum, withholding of removal under the Immigration and Nationality Act (INA), and relief under United Nations Convention Against Torture ("CAT"). She did so on behalf of herself, her husband and her son. On April 19, 2001, Varela was interviewed by an Asylum Officer, who concluded that she was not credible and therefore was not eligible for asylum. On April 25, 2001, she, her husband and son were served with Notices to Appear, which alleged that they were subject to removal because they had remained in the United States beyond the period of authorization. All three admitted the allegations and conceded removability at an initial hearing before an Immigration Judge (IJ). The judge told Varela that her application had "nothing in it," and suggested that she supplement the application. She did so on July 16, 2001.

On October 10, 2002, the IJ held an evidentiary hearing on Varela's application. He determined that Varela's testimony was not credible, denied her

application for asylum and withholding of removal, and ordered petitioners removed. Varela appealed the order to the Board of Immigration Appeals (BIA). Because the record of the evidentiary hearing was inadequate – the tape of the proceeding was blank in part – the BIA remanded the case to the IJ, who held a new evidentiary on January 30, 2005. Once again, the IJ found Varela's testimony not credible and denied the application in full. Varela appealed to the BIA, which affirmed on June 15, 2006, adopting the IJ's decision, with certain exceptions and additional comments, and dismissed the appeal. Varela now petitions this court for review.[1]

Varela raises three issues in her brief on behalf of the three petitioners:

1) Whether the BIA erred in upholding the IJ's finding that Varela's testimony lacked credibility;

2) whether the BIA erred in denying petitioners' application for asylum where Varela provided substantial testimony and documentary evidence that she suffered past persecution and has a well-founded fear of future persecution by the Revolutionary Armed Forces of Colombia (FARC), a guerilla group, on account of

---

[1] As an initial matter, petitioners make no argument on review regarding CAT relief and have thus abandoned this issue. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

her political opinion[2] and her membership in a particular social group; and

3) whether the BIA erred in denying withholding of removal by concluding that Varela failed to show that it is "more likely than not" that she will be persecuted on her return to Colombia.

To the extent that the BIA's decision was based on a legal determination, our review is de novo. Mohammed v. Ashcroft, 261 F.3d 1244, 1247-48 (11th Cir. 2001). The BIA's factual determinations are reviewed under the substantial-evidence test, and we "must affirm the BIA's decision if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Al Najjar v. Ashcroft, 257 F.3d 1284, 1283-84 (11th Cir. 2001) (citation omitted). The substantial evidence test is "deferential" and does not allow "re-weigh[ing] the evidence from scratch." Mazariegos v. U.S. Att'y Gen., 241 F.3d 1320, 1323 (11th Cir. 2001). "To reverse the IJ's fact findings, we must find that the record not only supports reversal, but compels it." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003) (considering withholding-of-removal claim). The fact that evidence in the record may also support a conclusion contrary to the administrative findings is not enough to justify a reversal. Adefemi v.

---

[2] Specifically, petitioners contend that they suffered past persecution and have a well-founded fear of future persecution because of threatening phone calls from members of the FARC, which aimed to prevent Varela from campaigning on behalf of the Colombian Conservative Party (CP).

4

<u>Ashcroft</u>, 386 F.3d 1022, 1027 (11th Cir. 2004), <u>cert. denied</u>, 125 S.Ct. 2245 (2005).  With these principles in mind, we turn to petitioners' first issue.

Petitioners submit that the BIA erred in upholding the IJ's adverse credibility determination.  When the IJ enumerates an applicant's inconsistencies and is supported by the record, we "may not substitute our judgment for that of the IJ with respect to its credibility findings."  <u>D-Muhumed v. U.S. Att'y Gen.</u>, 388 F.3d 814, 818 (11th Cir. 2004).  An IJ must make "clean determinations of credibility."  <u>Yang v. U.S. Att'y Gen.</u>, 418 F.3d 1198, 1201 (11th Cir. 2005) (quotation omitted).  The IJ must offer specific, cogent reasons for the adverse credibility findings.  <u>Forgue v. U.S. Att'y Gen.</u>, 401 F.3d 1282, 1287 (11th Cir. 2005).  "[T]he weaker the applicant's testimony, the greater the need for corroborative evidence."  <u>Yang</u>, 418 F.3d at 1201.

An alien's testimony, if credible,  may be sufficient to sustain the burden of proof for asylum or withholding of removal without corroboration. 8 C.F.R. §§ 208.13(a), 208.16(b).  "Conversely, an adverse credibility determination alone may be sufficient to support the denial of an asylum application."  <u>Forgue</u>, 401 F.3d at 1287.  Further, an adverse credibility determination does not alleviate the IJ's duty to consider all of an applicant's evidence.  <u>Id.</u>

We conclude that substantial evidence supports the BIA's decision upholding the IJ's adverse credibility finding.  Varela's testimony was inconsistent

5

with her asylum interview concerning when she first received threats from the FARC. According to the Asylum Officer's Referral Assessment, Varela said that the FARC began threatening her in December 1998. However, she testified at the asylum hearing before the IJ that the threats began in March 1996. The dates are over two and a half years apart and are not in the same year or month. In short, they are not the product of confusion or mistake. As Varela's testimony is inconsistent with her statements to the asylum officer, we must say that the adverse credibility finding is supported by substantial evidence. Next, as the IJ and BIA observed, Varela's testimony regarding her participation in political campaigns was inconsistent. Varela did not inform the asylum officer when she began participating in CP activities. However, she stated that she did not continue to volunteer after September 1998. In a supplement to her asylum application, Varela stated that she participated in the CP between the fall of 1995 and the end of 1999. Finally, she testified at the asylum hearing that her participation in the CP ended when she left Colombia, which was April 29, 2000. Varela provided vastly different accounts of when she stopped working with the CP; hence, the adverse credibility finding is supported by substantial evidence.

Although petitioners assert that Varela's testimony regarding her co-worker's death was not inconsistent, neither the IJ, nor the BIA, relied on the inconsistency in finding that Varela's testimony was not credible. Moreover, to the

6

extent that the IJ made improper comments and relied on his assumption in finding that Varela was not credible, the BIA admonished the IJ for his comments and declined to adopt those comments in support of its decision. Varela's testimony is inconsistent with her prior statements testimony concerning her political activity and threats from the FARC. The inconsistencies pertain to whether she was persecuted on account of her political opinion. Accordingly, the inconsistencies properly form the basis for the adverse credibility finding as they are specific and cogent. The IJ considered the adverse credibility determination to be determinative as his findings were based solely on her credibility, and, as shown below, Varela presented no other credible evidence of her persecution.

Addressing their second issue, petitioners submit that they put forth substantial testimony and documentary evidence of FARC threats to support their claim for asylum and withholding of removal. An alien who arrives in or is present in the United States may apply for asylum. INA § 208(a)(1), 8 U.S.C. § 1158(a)(1). The Secretary of the Department of Homeland Security or the Attorney General has discretion to grant asylum if the alien meets the INA's definition of a "refugee." INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). A "refugee" is defined in the INA as

> any person who is outside any country of such person's nationality . . .
> and who is unable or unwilling to return to, and is unable or unwilling
> to avail himself or herself of the protection of, that country because of

7

persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). The asylum applicant carries the burden of proving statutory "refugee" status. Al Najjar, 257 F.3d at 1284. To establish asylum eligibility, the alien must, with specific and credible evidence, establish (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" that the statutorily listed factor will cause such future persecution. 8 C.F.R. § 208.13(a), (b); see Al Najjar, 257 F.3d at 1287. "Demonstrating such a connection requires the alien to present specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution on account of [a statutory factor]." Al Najjar, 257 F.3d at 1287 (internal quotations and citation omitted) (emphasis in original). An asylum applicant may not show merely that she has a political opinion, but must show that she was persecuted because of that opinion. INS v. Elias-Zacarias, 502 U.S. 478, 483, 112 S.Ct. 812, 816, 117 L.Ed.2d 38 (1992). "[A]n imputed political opinion, whether correctly or incorrectly attributed, may constitute a ground for a well-founded fear of political persecution within the meaning of the INA." Al Najjar, 257 F.3d at 1289 (quotations and citations omitted).

While the INA does not define persecution, we have stated that mere harassment is not persecution, and that persecution requires "more than a few

8

isolated incidents of verbal harassment or intimidation." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (citation omitted). Other courts have generally held that persecution is "punishment or the infliction of harm for political, religious, or other reasons that this country does not recognize as legitimate." See, e.g. Tamas-Mercea v. Reno, 222 F.3d 417, 424 (7th Cir. 2000). "[P]ersecution encompasses more than threats to life or freedom; non-life threatening violence and physical abuse also fall within this category." Id.; see also Nelson v. INS, 232 F.3d 258, 263 (1st Cir. 2000) (persecution "must rise above unpleasantness, harassment, and even basic suffering"). Under Antipova v. U.S. Att'y Gen., 392 F.3d 1259, 1265 (11th Cir. 2004), the IJ is only required to make a finding regarding past persecution if substantial credible evidence is presented. See id. (evaluating withholding of removal claim).

If the alien establishes past persecution, it is presumed that her life or freedom would be threatened upon a return to that country unless the government shows by a preponderance that the country's conditions have changed such that the applicant's life or freedom would no longer be threatened upon her removal, or the alien could relocate within the country and it would be reasonable to expect her to do so. 8 C.F.R. § 208.13(b). An alien who has not shown past persecution may still be entitled to asylum or withholding of removal if she can demonstrate a future threat in his country to his life or freedom on a protected ground. Id.

9

§ 208.13(b)(2). To establish a well-founded fear, "an applicant must demonstrate that his or her fear of persecution is subjectively genuine and objectively reasonable." Al Najjar, 257 F.3d at 1289. However, if the IJ finds that the alien could avoid a future threat by relocating to another part of his country, and it would be reasonable to do so, she cannot demonstrate a well-founded fear of persecution. See 8 C.F.R. § 208.13(b)(1)-(2).

We conclude that substantial evidence supports the IJ's finding that Varela did not suffer past persecution on account of a protected ground. The IJ and BIA found that Varela's testimony, concerning her political activity and alleged persecution, was incredible, and, as explained above, this finding was supported by substantial evidence. The IJ further found that the documentary evidence she put forth was not reliable as it was too general to support her testimony. Varela only submitted two letters that stated that she left Colombia over security concerns. They did not mention threats from the FARC because Varela participated in CP activities.

Since petitioners failed to establish past persecution, they are not entitled to a presumption of a well-founded fear of future persecution. As stated above, the evidence is insufficient to compel a finding that Varela was threatened on account of her political opinion. Thus, that evidence does not compel a conclusion that the petitioners have a well-founded fear of persecution if returned to Colombia, in

10

particular, an objectively reasonable fear.

Finally, as to their third issue, petitioners claim they were eligible for withholding of removal under the INA. In a withholding of removal claim, an alien shall not be removed to a country if her life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. INA § 241(b)(3), 8 U.S.C. § 1231(b)(3). The alien must show that it is more likely than not that she will be persecuted or tortured upon being returned to her country." Sepulveda, 401 F.3d at 1232. This standard is more stringent than the "well-founded fear" standard for asylum, so an alien who is unable to meet the well founded fear standard for asylum necessarily is unable to qualify for withholding of removal. See Al Najjar, 257 F.3d at 1292-93.

Petitioners' withholding of removal claims fail because they did not establish eligibility for asylum, which carries a lower burden of proof.

**PETITION DENIED.**