[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 4, 2009
THOMAS K. KAHN
CLERK

No. 08-13610
Non-Argument Calendar

_____

Agency No. A95-710-331

XIAO LI JIANG,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(February 4, 2009)

Before TJOFLAT, BIRCH and DUBINA, Circuit Judges.

PER CURIAM:

Xiao Li Jiang ("Jiang"), a native and citizen of China, petitions this court for

review of the final order of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") denial of her claims for asylum and withholding of removal under the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1101 et seq., and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman and Degrading Treatment or Punishment ("CAT").[1] After review, we DENY the petition.

## I. BACKGROUND

On 7 June 2005, the Department of Homeland Security (formerly the Immigration and Naturalization Service) issued Jiang a Notice to Appear ("NTA") charging her with removability under INA § 212(a)(7)(A)(i)(I) as an alien who arrived in the United States without a valid entry document. Administrative Record ("AR") at 252.[2] On 1 January 2006, Jiang filed an application for asylum and withholding of removal based on political opinion and membership in a particular social group. Id. at 229. Specifically, Jiang alleged that Chinese officials were aware of her involvement with Falun Gong, a spiritual movement banned by the government in 1999, and had come to her family's home on two

---

[1] Jiang does not raise any challenge to the BIA's denial of CAT relief in her appellate brief and thus has abandoned this claim on appeal. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (per curiam) ("When an appellant fails to offer argument on an issue, that issue is abandoned.").

[2] At an initial hearing, Jiang appeared before the IJ, admitted the allegations in the NTA, and conceded removability. See AR at 66.

separate occasions in order to arrest her for distributing Falun Gong literature. Id. at 94-95, 225-33. Jiang fled to the United States following the police's second attempt to arrest her and was warned by her family not to return to China. Id. at 234.

At her July 2006 removal hearing, Jiang testified that she began practicing Falun Gong in March 2004 and helped her friend distribute leaflets containing information about the movement. Id. at 72, 78-79. After the police arrested her friend for participating in Falun Gong in July 2004, Jiang went into hiding in a rural area of Fuzhou City. Id. at 72-73, 79-80. While Jiang was in hiding, police officers came to her family's home to arrest her for distributing Falun Gong literature. Id. at 72-73. When Jiang returned to visit her family in February 2005, the police again came to her parents' home to arrest her. Id. at 73. Jiang escaped to the neighbor's house and subsequently fled to the United States in June 2005. Id. at 73-74.

Jiang testified that she would be arrested, beaten, and imprisoned if she were returned to China and that she could not live safely in another part of the country because the police were actively pursuing her as recently as one month before the asylum hearing. Id. at 77-78. Jiang admitted that she had been able to leave China using her own passport, but only after she bribed customs officials. Id. at 82. When asked specifically about her knowledge of Falun Gong, Jiang explained only

3

that it "is a kind of exercise. It's good to health, and health and body. So . . . it help[s] to be a good person." Id. at 79. She related that her practice of Falun Gong consisted of sitting in her room, meditating, and doing simple exercises. Id. at 81-82.

In addition to Jiang's testimony, the IJ also considered a letter affidavit from Jiang's mother, dated 8 January 2006, which restated the facts contained in Jiang's asylum application, and the U.S. Department of State's 2005 Country Report on Human Rights for China ("Country Report") and Profile of Asylum Claims and Country Conditions for China ("Profile"). According to the Country Report, although Falun Gong practitioners have received punishments ranging from loss of employment to imprisonment, most practitioners are punished administratively, and the "vast majority" of practitioners who were detained have been released. Id. at 170-71. Those identified by the government as "core leaders," however, have been "singled out for particularly harsh treatment." Id. The Profile reported that Falun Gong practitioners who refused to renounce Falun Gong "were sent to reeducation-through-labor camps, where in some cases, beatings and torture were used to force them to recant." Id. at 95. Since 1999, several hundred of the movement's adherents had died in detention due to torture, abuse, and neglect, and "[t]here [were] numerous credible reports of police involvement in beatings, detention under extremely harsh conditions, torture, and other abuses of Falun

4

Gong practitioners detained in prison or re-education-through-labor camps." Id.

The IJ found that while Jiang's testimony was consistent with her asylum application, "credibility [could] . . . be determined by looking through the amount of detail . . . provided during the course of the testimony," and Jiang's "extremely general testimony regarding Falun Gong and [its] practice . . . belie[d] her claim that she was actively involved in the practice." Id. at 52, 55-56. The IJ further found that the fact that Jiang was able to leave China using her own passport undermined her claim that she was being actively sought by Chinese officials. Id. at 56-57. Given Jiang's generic testimony and the absence of corroborating evidence, the IJ concluded that Jiang failed to meet her burden of showing past persecution or a well-founded fear of future persecution. Id. at 57-58. Inasmuch as Jiang failed to satisfy the lower burden of proof required to establish eligibility for asylum, her claim for withholding of removal necessarily failed. Id. at 57.

The BIA adopted and affirmed the IJ's decision, concluding that Jiang's "vague testimony and the meager supporting documentation fail[ed] to adequately meet the [ ] burden of proof" for establishing eligibility for asylum. Id. at 2. Jiang now petitions us for review of the IJ's and BIA's denial of relief.

## II. DISCUSSION

On appeal, Jiang argues that: (1) her lack of specific testimony about Falun Gong did not impair her credibility, which was corroborated by the letter from her

5

mother; (2) her knowledge about the practice of Falun Gong was irrelevant under the imputed political opinion doctrine; and (3) the IJ erred by failing to consider the Country Report on China, which indicates that the Chinese government continues to punish Falun Gong practitioners. Jiang argues additionally that her credibility must be presumed because the IJ did not make an adverse credibility finding.

"We review only the [BIA's] decision, except to the extent that it expressly adopts the IJ's opinion." Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). To the extent that the BIA does adopt the IJ's reasoning, we review the IJ's reasoning as well. Id. Because the BIA in this case adopted the IJ's findings and articulated additional reasoning of its own, we review both the IJ's and the BIA's decisions.

We review de novo the BIA's and IJ's legal conclusions. See Lopez v. U.S. Att'y Gen., 504 F.3d 1341, 1344 (11th Cir. 2007). Factual findings, including credibility determinations, are reviewed under the substantial evidence test, which requires us to affirm the BIA's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005) (quotation marks and citation omitted). Under this highly deferential standard, we view the record in the light most favorable to the BIA's decision and are bound by that decision unless a

6

reasonable adjudicator would be compelled to conclude to the contrary. Adefemi v. Ashcroft, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (en banc). Accordingly, "even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." Id. at 1029.

We note as an initial matter that the IJ did not make an adverse credibility determination in this case. IJs must make "clean determinations of credibility." Yang v. U.S. Att'y. Gen., 418 F.3d 1198, 1201 (11th Cir. 2005) (quotation marks and citation omitted). Where an IJ wishes to make an adverse credibility determination, he must do so explicitly and must support such a determination with specific, cogent reasons. See De Santamaria v. U.S. Att'y Gen., 525 F.3d 999, 1011 n.10 (11th Cir. 2008); Yang, 418 F.3d at 120. Although the IJ noted that Jiang's generic testimony contradicted her claim that she was actively involved with Falun Gong, this finding falls well short of a clean and explicit determination that she was not credible. See Yang, 418 F.3d at 1201 (IJ's finding that petitioner's claims were a "ridiculous fabrication," "extremely inconsistent," and "[made] absolutely no sense whatsoever," did not constitute explicit adverse credibility). Accordingly, we must accept the facts set forth in Jiang's asylum application and testimony as true for purposes of evaluating her asylum claim. See De Santamaria, 525 F.3d at 1011 n.10; Mejia v. U.S. Att'y Gen., 498 F.3d 1253,

7

1257 (11th Cir. 2007).

To establish asylum eligibility, the petitioner bears the burden of proving with "credible, direct, and specific evidence in the record" that she suffered past persecution, or has a "well-founded fear" of future persecution, on account of "race, religion, nationality, membership in a particular social group, or political opinion." Forgue, 401 F.3d at 1287 (citation omitted); 8 C.F.R. § 208.13(b). To qualify for withholding of removal under the INA, an applicant must show that it is "more likely than not" that he will be persecuted or tortured upon returning to his home country. Fahim v. U.S. Att'y Gen., 278 F.3d 1216, 1218 (11th Cir. 2002) (per curiam); see 8 C.F.R. § 208.16(b)(2). Because "[t]his standard is more stringent than the 'well-founded fear of future persecution' required for asylum," Tan v. U.S. Att'y Gen., 446 F.3d 1369, 1375 (11th Cir. 2006), an applicant who fails to establish eligibility for asylum cannot make out a claim for withholding of removal.

A. Past Persecution

"To establish asylum based on past persecution, the applicant must prove (1) that she was persecuted, and (2) that the persecution was on account of a protected ground." Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1236 (11th Cir. 2006). Although the INA does not expressly define "persecution," we have repeatedly stated that "persecution is an extreme concept, requiring more than a few isolated

8

incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution." Sepulveda, 401 F.3d at 1231 (quotation marks and citation omitted); see also Nelson v. INS, 232 F.3d 258, 263 (1st Cir. 2000) (persecution "must rise above unpleasantness, harassment, and even basic suffering"). Moreover, "[n]ot all exceptional treatment is persecution." Gonzalez v. Reno, 212 F.3d 1338, 1355 (11th Cir. 2000); see, e.g., Djonda v. U. S. Att'y Gen., 514 F.3d 1168, 1174 (11th Cir. 2008) (minor beating, even in conjunction with threats, did not compel finding of persecution); Zheng v. U. S. Att'y Gen., 451 F.3d 1287, 1289-92 (11th Cir. 2006) (per curiam) (no persecution where petitioner was dragged by his arms to a detention yard, detained for five days, and forced to watch reeducation videos, stand in the sun for two hours, and sign pledge not to practice his religion).

The incidents to which Jiang testified, namely that the Chinese police twice came to her home and attempted to arrest her for distributing Falun Gong literature, were neither sufficiently severe nor pervasive to constitute persecution. The record, which contains no evidence that Jiang ever was detained or physically injured either during or as a result of these events, or that any members of her family ever were mistreated, thus does not compel a conclusion contrary to that reached by the BIA in this case.

9

B. Well-founded Fear of Future Persecution

An alien who has not shown past persecution may still be entitled to asylum if she can prove that she has "(1) a subjectively genuine and objectively reasonable fear of persecution that is (2) on account of a protected ground." Silva, 448 F.3d at 1236 (quotation marks and citation omitted). The alien may satisfy the subjective component by offering credible testimony that she genuinely fears persecution and may satisfy the objective component by presenting "specific, detailed facts showing a good reason to fear that [s]he . . . will be singled out for persecution" on account of a statutorily listed factor. Al Najjar, 257 F.3d at 1289-90 (quotation marks, alteration, and citation omitted); 8 C.F.R. § 208.13(b)(2); see Mejia, 498 F.3d at 1256 (alien "need only show that there is a reasonable possibility of suffering such persecution if he or she were to return to that country") (quotation marks, alteration, and citation omitted).

Viewed in the light most favorable to the BIA's decision, the record reflects that Jiang's fear of persecution, though it may be subjectively genuine, is not objectively reasonable. The Country Report, which the IJ considered, indicates that the "vast majority" of Falun Gong practitioners who are imprisoned are subsequently released, and that the harshest treatment is reserved only for "core leaders" of the Falun Gong movement. See AR at 170. Jiang, however, has never claimed to be a leader of the Falun Gong movement. See Zheng, 451 F.3d at 1291-

10

The evidence further shows that Jiang was able to leave China using her own passport and that her parents continue to live peacefully and without incident in the same village in Fuzhou City. Thus, even assuming the veracity of Jiang's testimony that Chinese police were actively pursuing her as of the time of the asylum hearing, the record does not compel a finding that Jiang has a well-founded fear of future persecution. See Adefemi, 386 F.3d at 1027 ("[T]he mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings.").

Insofar as the evidence does not compel a finding that Jiang has a well-founded fear of persecution on account of a protected ground, it also does not compel the conclusion that Jiang has satisfied the more stringent standard applicable to a claim for withholding of removal. See Forgue, 401 F.3d at 1288 n.4 (noting that where petitioner fails to establish claim of asylum on merits, his claim for withholding of removal necessarily fails).

### III. CONCLUSION

Jiang seeks review of the BIA's denial of asylum and withholding of removal. Because the evidence does not compel a finding that Jiang suffered past persecution or has a well-founded fear of future persecution on account of her political opinion or any other protected ground, we DENY the petition.

**PETITION DENIED.**

11