[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-14706
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 12, 2010
JOHN LEY
CLERK

Agency No. A088-690-716

LAURENTIU BUBULICI,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(May 12, 2010)

Before TJOFLAT, BIRCH and WILSON, Circuit Judges.

PER CURIAM:

Laurentiu Bubulici, a native and citizen of Moldova proceeding *pro se*, petitions us for review of the Board of Immigration Appeals' ("BIA") final order affirming the Immigration Judge's ("IJ") denial of his application for asylum and withholding of removal under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158(a), 1231(b)(3), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), 8 C.F.R. § 208.16(c).[1] He argues that the BIA erred when it determined that he had neither suffered past persecution nor had a well-founded fear of persecution if he were returned to Moldova. For the reasons set forth in this opinion, we DENY Bubulici's petition as it relates to his claim of past persecution, GRANT Bubulici's petition as it relates to his claim of future persecution, VACATE the BIA's decision, and REMAND for further proceedings consistent with this opinion.

## I. BACKGROUND

Bubulici, a native and citizen of Moldova, entered the United States on or about 19 December 2006 on an H2B visa, which authorized him to remain in the country until 25 August 2007. Administrative Record ("AR") at 255. Bubulici

---

[1] Bubulici does not challenge the denial of CAT relief in his petition for review and thus we deem this claim abandoned. *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (per curiam).

submitted an application for asylum, withholding of removal, and CAT relief, alleging persecution on the basis of political opinion, on 25 July 2007. *Id.* at 146-154. On 25 September 2007, the Department of Homeland Security served Bubulici with a Notice to Appear ("NTA"), charging him with removability pursuant to INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), for remaining in the United States without authorization after the expiration of his visa. *Id.* at 255. Bubulici admitted the allegations in the NTA and conceded removability at an initial hearing. *Id.* at 82.

At his 4 November 2008 removal hearing, Bubulici testified that he joined the European Action Movement ("EAM"), a political party formed in opposition to the Communist Party, in 2005. *Id.* at 93. He explained that there were 10,000 EAM members country-wide and about fifty members in his village. *Id.* at 93-94. His father, who was the president of the EAM in their county, organized meetings and was "in charge [of] everything pertaining to the party's role in [the] county." *Id.* at 94-95. Bubulici testified that on 5 April 2006, three men approached him late at night as he was leaving a local market. *Id.* at 95-96. The men identified themselves as members of the Communist party, told Bubulici to stop his political activities, and punched and kicked him. *Id.* at 96-97. Bubulici sustained bruises to his face, chest, and abdomen, as well as a concussion. *Id.* at 97. He also

3

suffered digestive problems as a result of being kicked in the stomach. *Id.*

Bubulici was admitted to the hospital the following day and was told to rest for at

least two weeks. *Id.* at 97-98, 159. Following this incident, Bubulici received

several threatening phone calls warning him that he would be attacked again if he

did not cease his political activities. *Id.* at 98. Although Bubulici remained

politically active with EAM until leaving Moldova on 18 December 2006, he was

not attacked again. *Id.* at 98, 113.

Bubulici further testified that on 26 December 2006, three men approached

his father late at night and severely beat him. *Id.* at 98-99. During the attack, the

men warned his father that if Bubulici returned to Moldova, it would be "very bad

for [Bubulici], because [Bubulici] started the movement in the village." *Id.* at 99.

The assailants also told Bubulici's father that he could be killed if he continued his

activities with EAM. *Id.* Both Bubulici and his father reported their attacks to the

police, but the police did not investigate. *Id.* 99, 109. Bubulici then testified that

on the evening of 18 January 2007, police officers detained his parents on

suspicion that his mother, who was president of the Club of the European Council

("the Club"), a not-for-profit non-governmental organization, had stolen

humanitarian aid the Club had received from the U.S. *Id.* at 100-01. The police

also detained another EAM member and tried to coerce her into making a false

4

statement against Bubulici's mother. *Id.* at 100. Bubulici's mother was tried for burglary but was ultimately acquitted. *Id.* at 102, 160-61. Bubulici further testified that in May 2007, his parents were stopped near their house and beaten by unknown assailants, who demanded to know Bubulici's whereabouts. *Id.* at 100, 103, 162. His close friend and fellow EAM member also was robbed and beaten in May 2007 by men who threatened to kill him if he did not disclose Bubulici's whereabouts. *Id.* at 103, 162.

Finally, Bubulici testified that he feared returning to Moldova because he believed he would suffer beatings and that false charges would be brought against him. *Id.* at 102. He acknowledged that his family still lived in the same village, but stated that his parents were regularly investigated by the local police and that someone recently had broken into his family's computer center. *Id.* at 103. He indicated that due to Moldova's small size, it would be impossible for him to avoid persecution by relocating to a safer area of the country. *Id.* at 103-04.

The IJ issued an oral decision finding that while Bubulici's testimony was credible, he had not met his burden of proving that he suffered past persecution, or had an objective basis for fearing future persecution, on account of a protected ground if he returned to Moldova. *Id.* at 73-77. The IJ denied relief and ordered Bubulici removed. *Id.* at 77-78.

On appeal, the BIA found that Bubulici's April 2006 beating and the subsequent threatening phone calls, even taken together, did not rise to the level of past persecution. *Id.* at 2-3. The BIA further concluded that Bubulici had not established a well-founded fear of future persecution because he failed to show that the attacks on his parents or his mother's arrest and trial were on account of his parents' political opinions. *Id.* at 3. Specifically, the BIA found that the "attacks, which occurred on the street, at night, and by people his parents did not know, appear[ed] to be random acts of violence." *Id.* The BIA thus concluded that Bubulici had not shown a reasonably possibility of suffering persecution if returned to Moldova, and dismissed his appeal accordingly. *Id.* at 4. Bubulici now petitions us for review.

## II. DISCUSSION

Where, as here, the BIA issues its own opinion and does not adopt the IJ's decision, we review the BIA's decision only. *Rodriguez Morales v. U.S. Att'y Gen.*, 488 F.3d 884, 890 (11th Cir. 2007) (per curiam). We review the BIA's legal conclusions *de novo* and its factual findings under the substantial evidence test, which requires us to affirm the BIA's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Mejia v. U.S. Att'y Gen.*, 498 F.3d 1253, 1256 (11th Cir. 2007) (quotation marks and

citation omitted).  Under this highly deferential standard, we view the record in the light most favorable to the BIA's decision and are bound by that decision "unless [a] reasonable adjudicator would be compelled to conclude to the contrary." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (*en banc*) (citing 8 U.S.C. § 1252(b)(4)(B)).  Accordingly, "even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision."  *Id.* at 1029.

To establish asylum eligibility, the petitioner bears the burden of proving with "credible, direct, and specific evidence in the record" that he suffered past persecution, or has a "well-founded fear" of future persecution, on account of "race, religion, nationality, membership in a particular social group, or political opinion."  *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1287 (2005) (citation omitted); 8 C.F.R. § 208.13(b).

*A.  Past Persecution*

"To establish asylum based on past persecution, the applicant must prove (1) that [he] was persecuted, and (2) that the persecution was on account of a protected ground."  *Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1236 (11th Cir. 2006). Although the INA does not expressly define "persecution," we have repeatedly stated that "persecution is an extreme concept, requiring more than a few isolated

7

incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution." *Sepulveda*, 401 F.3d at 1231; *see also Silva*, 448 F.3d at 1237 (threatening phone calls are mere harassment or intimidation rather than persecution); *Nelson v. INS*, 232 F.3d 258, 263 (1st Cir. 2000) (persecution "must rise above unpleasantness, harassment, and even basic suffering"). Moreover, "[n]ot all exceptional treatment is persecution." *Gonzalez v. Reno*, 212 F.3d 1338, 1355 (11th Cir. 2000). For example, we have upheld a finding of no persecution where an alien was detained for thirty-six hours and beaten so severely that he was hospitalized for two days. *Djonda v. U. S. Att'y Gen.*, 514 F.3d 1168, 1171, 1174 (11th Cir. 2008). *See also Zheng v. U. S. Att'y Gen.*, 451 F.3d 1287, 1289-91 (11th Cir. 2006) (per curiam) (no persecution where petitioner was dragged by his arms to a detention yard, detained for five days, and forced to watch reeducation videos, stand in the sun for two hours, and sign pledge not to practice his religion); *but see Mejia*, 498 F.3d at 1255, 1257 (finding of persecution where petitioner was struck in the face with the butt of a rifle and suffered a broken nose).

Because no adverse credibility determination was made in this case, we must accept Bubulici's testimony as true. *See id.* at 1257. Bubulici testified that as a result of his attack he suffered bruises on his face, chest, and abdomen as well as a concussion and digestive problems. Although he went to the hospital, he was

8

not admitted for any significant length of time and his injuries did not require extensive treatment.  In light of the foregoing, we agree with the BIA that the beating Bubulici suffered, even when considered together with the telephone threats, was neither sufficiently severe nor pervasive to constitute persecution. The record thus does not compel a conclusion contrary to that reached by the BIA in this case.

## B.  Well-founded Fear of Future Persecution

An alien who has not shown past persecution may still be entitled to asylum if he can prove that he has "(1) a subjectively genuine and objectively reasonable fear of persecution that is (2) on account of a protected ground."  *Silva*, 448 F.3d at 1236 (quotation marks and citation omitted).  The alien may satisfy the subjective component by offering credible testimony that he genuinely fears persecution and may satisfy the objective component by presenting "specific, detailed facts showing a good reason to fear that he . . . will be singled out for persecution" on account of a statutorily listed factor.  *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1289-90 (quotation marks, alteration, and citation omitted) (11th Cir. 2001); 8 C.F.R. § 208.13(b)(2); *see Mejia*, 498 F.3d at 1256 (alien "need only show that there is a reasonable possibility of suffering such persecution if he or

9

she were to return to that country") (quotation marks, alteration, and citation omitted).[2]

An applicant's credible testimony may be sufficient, without corroboration, to sustain this burden. *See* INA § 208(b)(1)(B)(ii), 8 U.S.C. § 1158(b)(1)(B)(ii); 8 C.F.R. § 208.13(a). Where the applicant is deemed credible, the BIA may not discount the evidence provided by the applicant in order to conclude that he has not met his burden of proof as to issues about which he about which he testified. *See Mejia*, 498 F.3d at 1257; *Yang v. U.S. Att'y Gen.*, 418 F.3d 1198, 1201 (11th Cir. 2005).

In this case, the BIA found that Bubulici failed to demonstrate a reasonable probability that he would suffer persecution if he was returned to Moldova because he had not established that the attacks on his parents or his mother's arrest and trial were politically motivated. Bubulici testified, however, that his father's attackers warned his father to cease his political activities and demanded to know Bubulici's whereabouts and that the men who attacked his parents in May 2007

---

[2] To qualify for withholding of removal under the INA, an applicant must show that it is "more likely than not" that he will be persecuted or tortured upon returning to his home country. *Fahim v. U.S. Att'y Gen.*, 278 F.3d 1216, 1218 (11th Cir. 2002) (per curiam); *see* 8 C.F.R. § 208.16(b)(2). Because "[t]his standard is more stringent than the 'well-founded fear of future persecution' required for asylum," *Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1375 (11th Cir. 2006), an applicant who fails to establish eligibility for asylum cannot make out a claim for withholding of removal.

also demanded to know Bubulici's whereabouts. In concluding that these attacks were "random acts of violence," AR at 3, the BIA failed to credit this testimony. Therefore, we REMAND to the BIA to consider whether Bubulici's credible testimony concerning the harm suffered by his parents after his departure from Moldova establishes that he has a well-founded fear of persecution if he is returned to Moldova.

**PETITION DENIED IN PART, GRANTED IN PART; DECISION VACATED AND REMANDED.**